THE PEOPLE OF PUERTO RICO, Plaintiff, v. THE FAJARDO SUGAR COMPANY OF PORTO RICO ET AL., Defendants.

No. 1. Argued February 16, 1937.—Decided July 12, 1937.

B. *Fernández García*, Attorney General, *Miguel Guerra Mondragón*, *R. Rivera Zayas*, and *Lester P. Schoene* for plaintiff. *J. Henri Brown*, *Jaime Sifre, Jr.*, *José A. Poventud*, and *Arturo Aponte* for defendants.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Each one of the three defendant corporations herein has separately interposed demurrers to the amended information. We will consider and decide them in a single opinion and in the same order in which they were submitted to us:

1st. That this Supreme Court lacks jurisdiction to entertain this *quo warranto* proceeding because Acts No. 33 of July 22, 1935, and No. 44 of August 7, 1935, are null and void inasmuch as they were enacted by the Insular Legislature in excess of its legislative powers and in contravention of the provisions of the Organic Act of Puerto Rico and of the Federal Constitution.

The same legal questions raised by this demurrer and the same reasoning adduced in support thereof were considered by this Supreme Court in passing upon the motions to dismiss the original information which were presented by each of the defendants; and as no new arguments or legal grounds have been urged which would justify a change in our viewpoint, for the reasons stated in the opinion delivered by this

court in the above-entitled case on June 4, 1936, reported in 50 P.R.R. 156, the demurrer for want of jurisdiction must be overruled.

2d. That the amended information does not state facts sufficient to constitute a cause of action.

The arguments which the defendants in their briefs have advanced in order to attack the sufficiency of the information are largely a repetition of the arguments adduced in support of the demurrer for want of jurisdiction, which we have already overruled.

We have carefully examined the amended information. In conformity with the procedural rule requiring allegations to contain nothing but a statement of the ultimate facts on which plaintiff's right is based, the information in this case alleges: That The Fajardo Sugar Company of Porto Rico, hereinafter referred to as "The Fajardo," is a corporation organized under the laws of Puerto Rico and authorized to engage in agriculture and in the manufacture of sugar and to acquire real estate in this Island; that its corporate charter (Article Fourth, paragraph 10) provides that its right to own or control land in Puerto Rico shall be limited to 500 acres, in accordance with the provisions of section 3 of Joint Resolution No. 23 of the Congress, approved May 1, 1900; that in 1919 said corporation acquired all the properties and assets of the "Fajardo Sugar Company" of New York, which during the years from 1905 to 1911, by itself or through the instrumentality of The Fajardo Sugar Growers Association had acquired the ownership or control of some 30,700 acres of land; that the other defendant, The Fajardo Sugar Growers Association, hereinafter referred to as "The Growers," was organized under the laws of the State of New York to engage in the growing and cultivation of sugar cane, and is authorized to acquire such land as may be necessary to carry out those purposes, within the limitations fixed by law; and that, although The Growers describes itself as a

joint-stock association, said entity is to all practical purposes a corporation in accordance with the Constitution, laws, and decisions of the State of New York, under whose laws it was organized, and also because by its articles of association, by its methods of doing business, by its contracts, and by a certain deed of trust it has invested itself with the attributes of a corporation. After setting forth in detail the provisions of the articles of association by virtue of which said association has invested itself with the principal attributes of a corporate entity, the information alleges that The Growers does all its credit transactions in the name of The Fajardo through a certain contract entered into on March 27, 1923, whereby said corporation bound itself to look only to the assets of The Growers for the satisfaction of any debt owing by the latter in favor of The Fajardo; that by virtue of that agreement, The Growers avoids any liability on the part of the individual members thereof for the debts of the association; that further protection from liability by the individual members for the debts of the association is obtained through the deposit of 2,999 shares out of a total of 3,020 shares of the capital stock of the association under an agreement that all dividends accruing upon such shares of stock are to be paid over to The Fajardo for distribution *pro rata* among its stockholders, but without imposing any liability on the beneficiaries for the debts of The Growers.

The information goes on to allege that The Loíza Sugar Company, hereinafter designated as ''The Loíza'' is a corporation organized under the laws of Puerto Rico and authorized to purchase or lease real property; that its articles of incorporation (Fourth Section, subdivision (c)) expressly provide that its right to own or control lands in Puerto Rico shall be limited to 500 acres, and such limitation is described as being in accordance with the law of Congress of May 1, 1900; that on October 6, 1925, The Loíza, in violation of its charter and of the law of Congress, did own and control some 11,038.13 acres of land in this Island; that on October 6,

1925, The Fajardo purchased the entire capital stock of The Loíza thus acquiring the ownership and control of all the agricultural lands of the latter corporation and the management of its business; that on January 10, 1935, The Loíza conveyed to The Growers all the agricultural lands which it held and controlled in this Island, except 598.72 acres, and that such transfer was made for the purpose of concealing the identity of the true owner thereof; that the total area of agricultural lands now owned by The Growers and in which it now engages in agriculture amounts to 23,123.41 acres.

It is further alleged in the information that on March 19, 1919, The Greenwich Trust Company, a corporation of the State of Connecticut, and Mr. John S. Keith, who was acting at the instigation, under the control, and on behalf of The Fajardo and The Growers, entered into a trust indenture whereby 2,999 shares out of the total of 3,020 shares of the capital stock of The Growers, were deposited with the above-mentioned trust company which was to receive all dividends accruing upon said shares of stock and to pay them to The Fajardo for distribution among the stockholders of the latter corporation; that according to plaintiff's information, which complainant believes to be true, The Fajardo, by virtue of said trust indenture, obtained complete control of the property and the business of The Growers, which control it actively exercises and bound itself to assume any financial loss which might be incurred in the business of that association; that the managers, officers, and trustees of The Growers have often been at the same time officers or directors of The Fajardo and still continue to act at the instigation, under the control, and on behalf of the latter corporation; that by means of the control which it exercises over the representatives of The Growers and by means of the above-mentioned trust indenture, The Fajardo governs and controls the property and business of The Growers as effectively as if they belonged to it.

Lastly, it is alleged that by a contract entered into on March 27, 1923, The Growers agreed to deliver its cane to The Fajardo and the latter undertook to buy the said cane at current prices based upon 60 per cent of the sugar content thereof, but in no event to be less than the cost of producing such cane, including expenditures for rent, interest, and taxes. That under the terms of said contract, the planting, harvesting, and delivery of the cane can not be effected with a reasonable expectation of profit; that by means of the contract and the trust indenture above mentioned, The Fajardo absorbs the profits and the losses which may occur in the business and transactions of The Growers; that the total area of agricultural lands which The Fajardo now owns or controls, both by itself and through its two subsidiaries or agents, the other two defendants herein, amounts to 23,800 acres, which is contrary to the public policy of the People of Puerto Rico and in open conflict with the economic welfare of the community.

If we admit, as we are bound to admit for the purposes of a demurrer for insufficiency, that the facts alleged are true, the information in our opinion states facts sufficient to constitute a cause of action against each and all of the defendant corporations.

The information taken as a whole, sets forth in clear and precise terms the conception, development, and existence of a preconceived plan carried out with the intention of evading and violating the legal restrictions prohibiting agricultural corporations from owning or controlling more than 500 acres of land devoted to agriculture. In that plan The Fajardo Sugar Company of Porto Rico is depicted as the main character, the master mind, and The Loíza Sugar Company and The Fajardo Growers Association, as secondary characters, subject to the control and direction of the former. The means and ways of which The Fajardo has availed itself to acquire and hold under its domination or control 23,800 acres (*cuerdas*) of arable land are specifically alleged in the information

and show *prima facie* that the law has been violated by the defendants.

This demurrer must be overruled.

 3d. The Joint Resolution of Congress of May 1, 1900, arbitrarily, capriciously, and unconstitutionally discriminates against agricultural corporations, favoring civil partnerships and other entities also devoted to agriculture, thus violating the Fifth Amendment to the Constitution.

The said Joint Resolution (31 Stat. L., Res. 23, p. 715) reads in its pertinent part thus:

"Section 3.— . . . No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created, *and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land; and this provision shall be held to prevent any member of a corporation engaged in agriculture from being in any wise interested in any other corporation engaged in agriculture.* Corporations, however, may loan funds upon real estate security, and purchase real estate when necessary for the collection of loans, but they shall dispose of real estate so obtained within five years after receiving the title. Corporations not organized in Porto Rico, and doing business therein, shall be bound by the provisions of this section so far as they are applicable." (Italics ours.)

Said section has been translated into Spanish as follows:

"Ninguna sociedad estará autorizada para efectuar negocios de compra y venta de bienes raíces; ni se le permitirá poseer o tener dicha clase de bienes a excepción de aquéllos que fuesen racionalmente necesarios para poder llevar adelante los propósitos a que obedeció su creación; *y, en lo sucesivo, el dominio y manejo de terrenos de toda sociedad autorizada para dedicarse a la agricultura, estarán limitados, por sus estatutos, a una cantidad que no exceda de quinientos acres; y esta previsión será adoptada para impedir a cualquier miembro de una sociedad agrícola que tenga interés de ningún género en otra sociedad de igual índole.* Podrán, sin embargo, las sociedades efectuar préstamos, con garantías sobre bienes

raíces, y adquirir éstos cuando sea necesario para el cobro de los préstamos; pero deberán enajenarlos dentro de los cinco años desde que reciban el título de propiedad de los mismos. Las sociedades que no hayan sido organizadas en Puerto Rico, y que hagan negocios allí, estarán obligadas a cumplir lo dispuesto en esta Sección, hasta donde sea aplicable.'' (Italics ours.)

The Spanish translation of the words which we have underscored in the English text is so defective that, although the latter text is the one which must prevail, we feel obliged to make our own translation in order that it may serve as a basis for the construction we are to give to the statute. The correct translation, in our opinion, is as follows:

''Y toda corporación que en lo sucesivo fuere autorizada para dedicarse a la agricultura será limitada por sus cláusulas de incorporación al dominio y control de no más de quinientos acres de tierra; y esta disposición será interpretada en el sentido de impedir a cualquier miembro de una corporación dedicada a la agricultura que esté interesado en alguna forma en cualquiera otra corporación dedicada a la agricultura.''

The defendant corporations argue that the above-transcribed legal provision is unconstitutional in that it denies to them the ''equal protection of the laws,'' by establishing a discrimination against agricultural corporations and in favor of agricultural civil partnerships. The numerous cases cited in support of this contention are inapplicable to the case at bar. They all refer to fiscal statutes imposing taxes on certain corporations already in existence and exempting from their payment other corporate entities devoted to similar businesses.

In the instant case, we are not dealing with corporations already created under the protection of a former law. The limitation provided by the statute under construction is only applicable to ''every corporation hereafter authorized to engage in agriculture''—''*toda corporación que en lo sucesivo fuere autorizada para dedicarse a la agricultura.*'' The Fajardo Sugar Company of Porto Rico and The Loíza Sugar Company were organized under the laws of Puerto Rico

subsequently to the date on which the Joint Resolution of May 1, 1900, became effective, and in compliance with its provisions, both inserted in their articles of incorporation the statutory limitation which prohibits them from owning or controlling arable lands in excess of 500 acres. Without the acceptance or insertion of those statutory requisites the said corporations could never have acquired legal existence. And The Fajardo Sugar Growers Association when voluntarily engaging in business and in agriculture in Puerto Rico bound itself to respect the provisions of the statute.

A corporation, as defined by Chief Justice Marshall, is an artificial being, invisible, intangible, and existing only in contemplation of law; and it can only be created in accordance with the terms of some legislative provision. *Dartmouth College* v. *Woodward*, 4 Wheaton, 518, 636; *Feiner* v. *Reiss*, 98 N.Y. App. Div. 40; *Pennsylvania Railroad Company* v. *The Canal Commissioners*, 21 Pa. 9; *Stowe* v. *Flagg et al.*, 72 Ill. 397; *Hoadly* v. *County Commissioners*, 105 Mass. 519.

Incorporation, as an instrumentality to engage in any kind of business, is not an inherent right of the citizen. It is a privilege granted by the State to a number of citizens so that they may act as a single person under a common name with limited liability. Since a corporation is a creature of positive law, its rights, powers, and duties can only be those provided by the statute which gave it legal existence. See *United States* v. *Trinidad Coal Company*, 137 U.S. 160; *In Re Gibbs Estate*, 157 Pa. 59.

The States in their laws regulating corporations have reserved to themselves the power to limit the capital; to specify the kind of business in which this class of associations may engage; to fix the nominal value of the kinds of stock into which the corporate capital may be divided; to enumerate the powers which a corporation may exercise in the development of its business; to fix the amount and the character of the obligations it may contract, etc.

In addition to the powers expressly conferred by their

charter, corporations can exercise all such implied powers as may be indispensably necessary, convenient, or adequate for the exercise of their express powers.

The defendant corporations were organized under a law which expressly prohibits them from owning or controlling more that 500 acres of agricultural land, a prohibition which was set forth in express and clear terms in their articles of incorporation. The argument that said corporations need more than 500 acres in order to carry out the main purpose for which they were organized—the growing of sugar cane and the manufacture of sugar—and that, therefore, they have the implied power to own and control the number of acres necessary for such purpose, fails to convince us, inasmuch as the doctrine of implied powers can not be invoked in the face of the express prohibition of the statute especially where such a prohibition was incorporated in the statute in order to give validity and effect to the public policy announced by the State which created said corporations. The purpose sought by the statute was to prevent the control of the arable lands of this small island of 3,435 square miles, by a small number of corporations—Frankenstein monsters, as Justice Brandeis calls them in *Liggett Co.* v. *Lee,* 288 U.S. 548— and to protect its population of 1,700,000 souls against the monopoly which would end by converting them into mere serfs of a big sugar factory.

We are of the opinion that the Joint Resolution of May 1, 1900, does not violate the rights of any corporation, nor does it deny in any way the equal protection of the laws.

We must hold, further, that the defendant corporations are estopped to set up the unconstitutionality of the statute. Their incorporators requested and obtained from the State a corporate franchise worded in accordance with the statute they now attack, and they can not be permitted to reject now its limitations without waiving at the same time the benefits and privileges of incorporation. Corpus Juris says:

"Where corporations have been organized which proceed to do business under the provisions of a statute, and receive benefits under it, they cannot be heard to allege that such a statute is unconstitutional." 12 C. J. 770, sec. 194.

See *Grand Rapids & Indiana Railway Co.* v. *Osborn*, 193 U.S. 17, 48 L. ed. 598; *St. John* v. *Building & Loan Ass'n*, 136 Iowa 448, 113 N.W. 863; *Minneapolis & St. L. R. Co.* v. *Gowrie & N.W. Ry. Co.*, 123 Iowa 543, 99 N.W. 181, 183; *State* v. *Michel*, 125 La. 55, 51 So. 66.

The statute in question is not a law of a mandatory character. It is optional by its nature. The incorporators of the defendant entities were not bound to choose the incorporation as the means to develop their business in Puerto Rico. The State offered them the opportunities and privileges of incorporation, but subject to all limitations and restrictions provided by the statute itself and by the laws in force for the protection of the insular community. The Supreme Judicial Court of Massachusetts, in a case similar to the one at bar, said:

"They were made the conditions upon which the corporation came into existence and accepted its franchise. If these restrictions were originally lawful, and if they have not been withdrawn or affected by subsequent modification thereof, the corporation cannot, while it continues to exercise its franchises, complain of their enforcement. It is as if the corporation had been created by a special charter containing the same restrictions. The corporation can raise no question of the constitutionality of a proceeding in accordance with the charter which it was content to accept. It has come into being, and has consented to come into being, subject to these restrictions and cannot be heard to complain of them." *Murphy* v. *Worcester Consol. St. Ry. Co.*, 199 Mass. 279, 85 N. E. 507, 509.

See also *State* v. *Boston & M.R.R. Co.*, 75 N.H. 327, 74 Atl. 542; *Electric Co.* v. *Dow*, 166 U.S. 489, 41 L. ed. 1088; *Mayor, etc., of City of New York* v. *Manhattan Ry. Co.*, 143 N.Y. 1, 37 N.E. 494, 501.

Even though the defendant corporations had not inserted in their charters the 500-acre limitation, they would

still be bound by the statute which was already in force at the time of their incorporation, inasmuch as it is a well-established legal doctrine that "the laws under which corporations organize become a part of their charter and are binding on them." 12 C.J. 770, section 194; *Alabama & V. Ry. Co.* v. *Odeneal,* 73 Miss. 34, 19 S. 202; *Interstate Ry Co.* v. *Massachusetts,* 207 U.S. 79, 52 L. ed. 111; *Kansas City & C.R.R. Co.* v. *Stiles,* 242 U.S. 111, 117.

█ The power of the National Congress to limit the amount of land which an agricultural corporation may legally own within the territorial limits of Puerto Rico is indisputable. It is supported by numerous decisions which we shall merely cite in order not to make this opinion unnecessarily long. See *El Paso & N. E. Ry.* v. *Gutiérrez,* 215 U.S. 87; *National Bank* v. *County of Yankton,* 101 U.S. 129; *United States* v. *McMillan,* 165 U.S. 504; *In re McGraw Estate,* 111 N.Y. 66, affirmed in *Cornell University* v. *Fiske,* 136 U.S. 152; *Mormon Church* v. *United States,* 136 U.S. 1.

█ 4th. That there is a misjoinder of causes of action.

The Loíza Sugar Company maintains that it is not a proper or necessary party to this proceeding because, even assuming that The Fajardo Sugar Company of Porto Rico owned a certain number of its shares of stock, the applicable legal remedy would not be to dissolve both corporations, but to order The Fajardo to dispose of the stock it owns, should any law so require.

In the opinion delivered on June 4, 1936, in this same proceeding (50 P.R.R. 156), we stated that "in view of the terms of the information, the central entity violating the law appears to be the defendant, The Fajardo Sugar Company of Porto Rico"; and that the other two defendants are, according to the information, "its subsidiaries" used as agencies to control and hold land in excess of the amount permitted by the law and by its own articles of incorporation.

If it is true—and we must admit that it is so for the purposes of the demurrer—that on October 16, 1925, The Loíza Sugar Company was the owner of more than eleven thousand acres of land which it acquired in violation of law; that on that date The Fajardo Sugar Company bought all the shares of stock of The Loíza and obtained the control and management of its business; that on January 10, 1935, The Loíza sold to The Fajardo Sugar Growers Association all the lands it owned with the exception of 598.72 acres, and that such transfer was made in order to conceal the identity of the true owner of the said lands; and, lastly, that The Fajardo Sugar Growers Association is a subsidiary of The Fajardo Sugar Company and that the former is controlled, financed, and managed by the latter, which has also employed it as a means or agency to acquire the ownership or control of 30,700 acres of land in contravention of the statute and of its charter, we must reach the unavoidable conclusion that each and all of the defendant entities are proper and necessary parties to this proceeding. It would not be possible to get to the bottom of the alleged legal combination and to enforce the public policy of decentralizing the arable lands of our Island, through a judgment of this court unless we subjected to our jurisdiction all those juridical persons or entities mentioned in the information as the parties which formed the alleged combination. The Loíza Sugar Company seems to be one of the links of the chain allegedly forged by The Fajardo Sugar Company in order to fetter the law. In our judgment it is a necessary party to this proceeding. This ground of demurrer must be overruled.

On behalf of The Fajardo Sugar Growers Association it is urged that it has been improperly joined as a party to this proceeding. The ground of this demurrer is that the said corporation is not a corporation in the sense and within the scope that the term corporation has in the Joint Resolution of May 1, 1900.

It is alleged that according to the law and the decisions. of the State of New York, the said association is for all prac-tical purposes a corporation; and further, that by its articles of association, by its method of doing business, by its con-tracts, and by the terms of a certain trust indenture, to which The Fajardo is a party, The Growers has invested itself with all the attributes of a corporation. In the statement that we made at the beginning of this opinion, we summarized those allegations of the information tending to establish the finan-cial control that The Fajardo exercises over The Growers, over its shares of stock, over its dividends, profits, benefits, etc.

The final determination of the legal question as to whether or not The Growers is a corporation within the scope and meaning of the statute, must necessarily depend upon the in-terpretation that we may give to its articles of association, on the construction that the courts of the State of New York have given to its laws, and on the sufficiency of the evidence that the plaintiff may adduce to establish the facts alleged by it. The demurrer necessarily admits the truth of the facts. alleged; and these facts, in our opinion, are sufficient for us to hold that The Fajardo Sugar Growers Association is a necessary party to this proceeding. It would not be im-proper to state here that we will consider it a necessary party, even though it were not a corporation, if from the pleadings and the evidence it should appear that the said association is a subsidiary of The Fajardo Sugar Company and that it is used by the latter as an instrumentality, medium, or agency to violate the law and avoid its sanctions. The interdependence of the three defendant entities among them-selves and the intimate relations existing among the facts imputed to each and all of them—facts constituting the illegal transaction which is the subject of the cause of action—are by themselves sufficient for us to hold that the three defend-

ant entities are necessary parties, and that the demurrer must be overruled.

■ 5th. Misjoinder of causes of action.

We have carefully studied the very able arguments of counsel for The Fajardo Sugar Company and for The Fajardo Sugar Growers Association in order to convince us that eight different causes of action have been improperly joined in the complaint. In this they have failed.

The information denounces the formation and realization of a general plan, preconceived and carried into effect for the purpose of violating the law. The Fajardo Sugar Company of Porto Rico is pointed out as the principal party and main beneficiary under the plan. The other two defendants are designated as secondary parties, as media or instrumentalities of which the former avails itself for the development of the plan. The sole purpose of the plan is to enable The Fajardo Sugar Company of Porto Rico to own or control 23,800 acres of land suitable for the growing of sugar cane, in contravention of the law and the public policy announced by the Congress and by the People of Puerto Rico.

The acts charged against each of the three defendants, as overt acts committed in pursuance of a central direction and common plan, can not be considered as different and individual causes of action which must be separately established. All these acts are so intimately interrelated that in reality they constitute a single transaction. A single objective is also sought by the proceeding instituted—to dissolve and to dismember an illegal combination through the dissolution of its component parts, and to break up the latifundium created by it.

"From the very nature of things, to constitute a misjoinder there must be two or more causes of action stated. A demurrer for misjoinder of causes of action does not, therefore, lie merely because a complaint has pleaded a single cause of action in two or more courts; because the contract sued on specifies several distinct items or pay-

ments to be made; because several injuries are alleged; because the acts done in pursuance of a conspiracy embrace different transactions; or because more than one species of relief is demanded." 1 Bancroft's Code Pleading, pp. 338–339.

See also *Lucero et al.,* v. *Heirs of Vilá,* 17 P.R.R. 141; *Batlle* v. *Torruellas,* 39 P.R.R. 188; *Serra Garabís & Co., Inc.* v. *Municipality,* 42 P.R.R. 452; *Stubbe Bros Inc.* v. *Díaz,* 43 P.R.R. 75; *E. Solé & Co., S. en C.,* v. *Rocafort,* 45 P.R.R. 30; *Cochran* v. *Fernández,* 47 P.R.R. 666; and *Doudell* v. *Shoo,* 20 Cal. App. 424.

In our opinion the alleged misjoinder is nonexistent. The demurrer must be overruled.

In conclusion, we wish to state that the amended information is perfectly intelligible, free from ambiguities, and that its perusal has left no doubt in our mind as to the cause of action brought or as to the sufficiency of the facts alleged to support the same. The arguments adduced to the contrary are not convincing.

For the reasons stated each and all of the demurrers interposed must be overruled; and each of the defendants is granted a term of 30 days to answer the amended information.

Mr. Justice Wolf concurs in the result.

Mr. Justice Córdova Dávila took no part in the decision of this case.