# INTERSTATE CONSOLIDATED STREET RAILWAY COMPANY *v.* COMMONWEALTH OF MASSACHUSETTS.

ERROR TO THE SUPERIOR COURT OF THE STATE OF MASSACHUSETTS.

No. 13.  Argued October 15, 16, 1907.—Decided November 4, 1907.

Requirements contained in another statute or document may be incorporated in a charter by generic or specific reference and, if clearly identified, the charter has the same effect as if it itself contained the restrictive words, and the question of the constitutionality of the statute referred to is immaterial.

A street railway corporation taking a legislative charter subject to all duties and restrictions set forth in all general laws relating to corporations of that class cannot complain of the unconstitutionality of a prior enacted statute compelling them to transport children attending public schools at half price.

187 Massachusetts, 436, affirmed.

THE facts, which involve the constitutionality of the statute of Massachusetts requiring the transportation of school children by certain railways at half fare, are stated in the opinion.

*Mr. Everett Watson Burdett,* with whom *Mr. Joseph H. Knight* was on the brief, for plaintiff in error:

The statute is invalid as a rate regulation. It makes an arbitrary and unreasonable discrimination, at the expense of the plaintiff in error, in favor of certain members of the community, to wit, school children, and of a portion only of such children, to wit, those attending public schools. That this is unlawful is

admitted by the Supreme Judicial Court of Massachusetts in its opinion in this case, where it says that if the statute were to be regarded as an absolute and arbitrary selection of a class, independently of good reasons for making a distinction, the provision would be unconstitutional and void. *Commonwealth* v. *Interstate Street Ry. Co.*, 187 Massachusetts, 436, 438; *Gulf &c. Ry.* v. *Ellis,* 165 U. S. 150. And see *Lake Shore &c. Ry.* v. *Smith*, 173 U. S. 684, holding it unlawful to charge one class of passengers, to wit, those who can afford to buy 1000-mile tickets, less than those who are not fortunate enough to be members thereof. As a question of rate regulation, there is no distinction between that case and this.

Plaintiff in error is not estopped to set up the unconstitutionality of the statute. *O'Brien* v. *Wheelock*, 184 U. S. 450, 489.

The statute is invalid as a police regulation.

The promotion of education has no real or direct relation to the statute in question. It does not bear any reasonable or just relation to the act in respect to which the classification is proposed. *Lake Shore &c. Ry.* v. *Ohio*, 173 U. S. 285, 290.

While education may be promoted in aid of the general welfare, like all subjects of legislation in aid of the general welfare, it is subject to the limitations of the Constitution, and a statute in order to be valid must not impinge upon the fundamental rights guaranteed thereby. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, at 558; *Barbier* v. *Connolly*, 113 U. S. 27, 31, 32; *Lake Shore &c. Ry. Co.* v. *Smith*, 173 U. S. 684.

While the destruction of property or of its use is not subject to the limitation of the constitution respecting compensation, if such destruction is in pursuance of police regulations for the public health, morals or safety; if a taking of property or of its use is involved, then it can only be done subject to the constitutional guaranties of just compensation and equal protection of the laws. In the present case plaintiff's property, or the use of its property, is taken without due process of law, *i. e.*, without just compensation; and the corporation is dis-

criminated against in favor of certain favored individuals, and is thus deprived of the equal protection of the laws.

It, therefore, is not the exercise of the police power, but of the general power of sovereignty to enact laws for the general welfare. But, in either case, it would be subject to the limitations of the constitution against the taking of property without due process of law, and against the deprivation of the right enjoyed by every citizen that he shall not be denied the equal protection of the laws.

If otherwise valid as a police regulation, the statute is partial and unequal in its application, and is therefore invalid.

If street railways are selected by the State as proper instrumentalities to be used, without reward, for the promotion of education, then all street railways must be so used. If one system can be exempted, then any other can likewise be exempted, and the logical conclusion follows that the legislature may impose this obligation upon any one or more companies of this character, and exempt all the rest. This would clearly be discrimination, without reason or justice, and would be invalid. It would not be rate regulation at all, but an improper exercise of the police power. *Gulf &c. Ry. Co.* v. *Ellis,* 165 U. S. 150, 159. See also *Barbier* v. *Connolly,* 113 U. S. 27; *Soon Hing* v. *Crowley,* 113 U. S. 703; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79.

The statute takes the property of the plaintiff in error without just compensation, and therefore without due process of law.

The statute prescribes that the rate to be charged for public school children shall be one-half the regular rate. The regular rate of a common carrier must be a reasonable one. *Interstate Commerce Commission* v. *Railway Company,* 167 U. S. 479, 494.

The statute, therefore, in effect prescribes that public school children shall be carried at one-half the reasonable rate, and hence on its face deprives the transportation company of its service, that is to say, its property, without just compensation.

Hutchinson on Carriers, 3d ed. § 521, p. 568; Rorer on Railroads, 1372; *Tift* v. *Railway Company*, 123 Fed. Rep. 789.

*Mr. Dana Malone*, with whom *Mr. Fred. T. Field* was on the brief, for defendant in error:

Since the decision of *Munn* v. *Illinois*, 94 U. S. 113, the law has been settled that a State has power to limit the amount of charges by railroad companies for the transportation of persons or property within its own jurisdiction. *Ruggles* v. *Illinois*, 108 U. S. 526; *Railroad Commission Cases*, 116 U. S. 307, *et seq.*; *Dow* v. *Beidelman*, 125 U. S. 680; *Georgia Railroad & Banking Co.* v. *Smith*, 128 U. S. 174; *Chicago & Grand Trunk R. R. Co.* v. *Wellman*, 143 U. S. 339; *St. Louis & San Francisco R. R. Co.* v. *Gill*, 156 U. S. 649; *Smyth* v. *Ames*, 169 U. S. 466; *Louisville & Nashville R. R. Co.* v. *Kentucky*, 183 U. S. 503; *Minneapolis & St. Louis R. R. Co.* v. *Minnesota*, 186 U. S. 257.

The plaintiff in error cannot object that, by reason of the provisions of § 72 of ch. 112, Rev. Laws, its property is taken or it is deprived of the equal protection of the laws, for it accepted its charter subject to these provisions. The law was enacted as St. 1900, c. 197, approved April 4, 1900, and took effect upon its passage and its provisions are in substance the same; hence they are to be construed as continuations thereof, and not as new enactments. R. L., c. 226, § 2; *Commonwealth* v. *Anselvich*, 186 Massachusetts, 376, 379. The burden upon the plaintiff in error was not increased by the revision of the statute.

The plaintiff in error was incorporated by St. 1901, c. 159, approved March 15, 1901, and took effect upon its passage. This statute was a public act, R. L., c. 175, § 72, and may be referred to here. See *Covington Draw Bridge Co.* v. *Shepherd*, 20 How. 227, 232; *Case* v. *Kelley*, 133 U. S. 21, 27; *Harris* v. *Quincy*, 171 Massachusetts, 472.

The statute was, therefore, in force when the plaintiff in error was incorporated, and it became subject to it. In fact,

the act of incorporation expressly provided that the plaintiff in error should be subject to general laws. St. 1901, c. 159, § 2. See also section 3. This condition was express as well as implied, and upon which the State granted the franchise. The Fourteenth Amendment is not violated by the subjecting of a corporation to the general laws in force at the time of its incorporation. *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238, 247. A State may properly impose such a restriction as a condition upon which it grants a franchise. *Railroad Company* v. *Maryland,* 21 Wall. 456; *Ashley* v. *Ryan,* 153 U. S. 436; *Louisville & Nashville Railroad Co.* v. *Kentucky,* 161 U. S. 677; *Purdy* v. *Erie Railroad Company,* 162 N. Y., 42.

MR. JUSTICE HOLMES delivered the opinion of the court.

This was a complaint against the plaintiff in error for refusing to sell tickets for the transportation of pupils to and from the public schools at one-half the regular fare charged by it, as required by Mass. Rev. Laws, c. 112, § 72. At the trial the Railway Company admitted the fact, but set up that the statute was unconstitutional, in that it denied to the company the equal protection of the laws and deprived it of its property without just compensation and without due process of law. In support of this defence it made an offer of proof which may be abridged into the propositions that the regular fare was five cents; that during the last fiscal year the actual and reasonable cost of transportation per passenger was 3.86 cents, or, including taxes, 4.10 cents; that pupils of the public schools formed a considerable part of the passengers carried by it, and that the one street railway expressly exempted by the law transported nearly one-half the passengers transported on street railways and received nearly one-half the revenue received for such transportation in the Commonwealth. The offer was stated to be made for the purpose of showing that the plaintiff in error could not comply with the statute without carrying passengers for less than a reasonable compensation

and for less than cost. The offer of proof was rejected, and a ruling that the statute was repugnant to the Fourteenth Amend-ment was refused. The plaintiff in error excepted and, after a verdict of guilty and sentence, took the case to the Supreme Judicial Court. 187 Massachusetts, 436. That Court overruled the exceptions, whereupon the plaintiff in error brought the case here.

This court is of opinion that the decision below was right. A majority of the court considers that the case is disposed of by the fact that the statute in question was in force when the plaintiff in error took its charter, and confines itself to that ground. The section of the Revised Laws (c. 112, § 72), was a continuation of St. 1900, c. 197. Rev. Laws, c. 226, § 2. *Commonwealth* v. *Anselvich*, 186 Massachusetts, 376, 379, 380. The act of incorporation went into effect March 15, 1901. St. 1901, c. 159. By the latter act the plaintiff in error was "subject to all the duties, liabilities and restrictions set forth n all general laws now or hereafter in force relating to street railway companies, except," etc. § 1. See also § 2. There is no doubt that, by the law as understood in Massachusetts, at least, the provisions of Rev. L. c. 112, § 72, St. 1900, c. 197, if they had been inserted in the charter in terms, would have bound the corporation, whether such requirements could be made constitutionally of an already existing corporation or not. The railroad company would have come into being and have consented to come into being subject to the liability and could not be heard to complain. *Rockport Water Co.* v. *Rockport*, 161 Massachusetts, 279; *Ashley* v. *Ryan*, 153 U. S. 436, 443; *Wight* v. *Davidson*, 181 U. S. 371, 377; *Newburyport Water Co.* v. *Newburyport*, 193 U. S. 561, 579.

If the charter, instead of writing out the requirements of Rev. L. 112, § 72, referred specifically to another document expressing them, and purported to incorporate it, of course the charter would have the same effect as if it itself contained the words. If the document was identified, it would not matter what its own nature or effect might be, as the force given to it

by reference and incorporation would be derived wholly from the charter. The document, therefore, might as well be an unconstitutional as a constitutional law. See *Commonwealth* v. *Melville*, 160 Massachusetts, 307, 308. But the contents of a document may be incorporated or adopted as well by generic as by specific reference, if only the purport of the adopting statute is clear. *Corry* v. *Baltimore*, 196 U. S. 466, 477. See *Purdy* v. *Erie R. R. Co.*, 162 N. Y., 42.

Speaking for myself alone, I think that there are considerations on the other side from the foregoing argument that make it unsafe not to discuss the validity of the regulation apart from the supposition that the plaintiff in error has accepted it. See *W. W. Cargill Co.* v. *Minnesota*, 180 U. S. 452, 468. Therefore I proceed to state my grounds for thinking the statute constitutional irrespective of any disabilities to object to its terms.

The discrimination alleged is the express exception from the act of 1900 of the Boston Elevated Railway Company and the railways then owned, leased or operated by it. But, in the first place, this was a legislative adjudication concerning a specific road, as in *Wight* v. *Davidson*, 181 U. S. 371, not a general prospective classification as in *Martin* v. *District of Columbia*, 205 U. S. 135, 138. A general law must be judged by public facts, but a specific adjudication may depend upon many things not judicially known. Therefore the law must be sustained on this point unless the facts offered in evidence clearly show that the exception cannot be upheld. But the local facts are not before us, and it follows that we cannot say that the legislature could not have been justified in thus limiting its action. *Covington & Lexington Turnpike Road Co.* v. *Sandford*, 164 U. S. 578, 597, 598. In the next place, if the only ground were that the charter of the Elevated Railway contained a contract against the imposition of such a requirement, it would be attributing to the Fourteenth Amendment an excessively nice operation to say that the immunity of a single corporation prevented the passage of an otherwise desirable and wholesome law. It is unnecessary to consider what would be the

effect on the statute by construction in Massachusetts if the exception could not be upheld. For, if in order to avoid the Scylla of unjustifiable class legislation, the law were read as universal, (see *Dunbar* v. *Boston & Providence R. R. Co.*, 181 Massachusetts, 383, 386) it might be thought by this Court to fall into the Charybdis of impairing the obligation of a contract with the elevated road, although that objection might perhaps be held not to be open to the plaintiff in error here. *Hatch* v. *Reardon*, 204 U. S. 152, 160.

The objection that seems to me, as it seemed to the court below, most serious is that the statute unjustifiably appropriates the property of the plaintiff in error. It is hard to say that street railway companies are not subjected to a loss. The conventional fare of five cents presumably is not more than a reasonable fare, and it is at least questionable whether street railway companies would be permitted to increase it on the ground of this burden. It is assumed by the statute in question that the ordinary fare may be charged for these children or some of them when not going to or from school. Whatever the fare, the statute fairly construed means that children going to or from school must be carried for half the sum that would be reasonable compensation for their carriage, if we looked only to the business aspect of the question. Moreover, while it may be true that in some cases rates or fares may be reduced to an unprofitable point in view of the business as a whole or upon special considerations, *Minneapolis & St. Louis R. R. Co.* v. *Minnesota*, 186 U. S. 256, 267, it is not enough to justify a general law like this, that the companies concerned still may be able to make a profit from other sources, for all that appears. *Atlantic Coast Line R. R. Co.* v. *North Carolina Corporation Commission*, 206 U. S. 1, 24, 25.

Notwithstanding the foregoing considerations I hesitatingly agree with the state court that the requirement may be justified under what commonly is called the police power. The obverse way of stating this power in the sense in which I am using the phrase would be that constitutional rights like others

are matters of degree and that the great constitutional provisions for the protection of property are not to be pushed to a logical extreme, but must be taken to permit the infliction of some fractional and relatively small losses without compensation, for some at least of the purposes of wholesome legislation. *Martin* v. *District of Columbia*, 205 U. S. 135, 139; *Camfield* v. *United States*, 167 U. S. 518, 524.

If the Fourteenth Amendment is not to be a greater hamper upon the established practices of the States in common with other governments than I think was intended, they must be allowed a certain latitude in the minor adjustments of life, even though by their action the burdens of a part of the community are somewhat increased. The traditions and habits of centuries were not intended to be overthrown when that amendment was passed.

Education is one of the purposes for which what is called the police power may be exercised. *Barbier* v. *Connolly*, 113 U. S. 27, 31. Massachusetts always has recognized it as one of the first objects of public care. It does not follow that it would be equally in accord with the conceptions at the base of our constitutional law to confer equal favors upon doctors, or workingmen, or people who could afford to buy 1000-mile tickets. Structural habits count for as much as logic in drawing the line. And, to return to the taking of property, the aspect in which I am considering the case, general taxation to maintain public schools is an appropriation of property to a use in which the taxpayer may have no private interest, and, it may be, against his will. It has been condemned by some theorists on that ground. Yet no one denies its constitutionality. People are accustomed to it and accept it without doubt. The present requirement is not different in fundamental principle, although the tax is paid in kind and falls only on the class capable of paying that kind of tax—a class of *quasi* public corporations specially subject to legislative control.

Thus the question narrows itself to the magnitude of the burden imposed—to whether the tax is so great as to exceed

the limits of the police power. Looking at the law without regard to its special operation I should hesitate to assume that its total effect, direct and indirect, upon the roads outside of Boston amounted to a more serious burden than a change in the law of nuisance, for example, might be. See further, *Williams* v. *Parker*, 188 U. S. 491. Turning to the specific effect, the offer of proof was cautious. It was simply that a "considerable percentage" of the passengers carried by the company consisted of pupils of the public schools. This might be true without the burden becoming serious. I am not prepared to overrule the decision of the legislature and of the highest court of Massachusetts that the requirement is reasonable under the conditions existing there, upon evidence that goes no higher than this. It is not enough that a statute goes to the verge of constitutional power. We must be able to see clearly that it goes beyond that power. In case of real doubt a law must be sustained.

MR. JUSTICE HARLAN is of opinion that the constitutionality of the act of 1900 is necessarily involved in the determination of this case. He thinks the act is not liable to the objection that it denies to the railway company the equal protection of the laws. Nor does he think that it can be held, upon any showing made by this record, to be unconstitutional as depriving the plaintiff in error of its property without due process of law. Upon these grounds alone, and independent of any other question discussed, he joins in a judgment of affirmance.

*Judgment affirmed.*

MR. JUSTICE MOODY, having been of counsel, did not sit in this case.