## PIEL BROS. v. DAY, Federal Prohibition Director, et al.

(District Court, E. D. New York. February 7, 1922.)

1. **States ⬳4—Police power has not been delegated to federal government.**

   The police power has never been delegated by the several states to the federal government.

2. **Intoxicating liquors ⬳2½, New, vol. 8A Key-No. Series—Congress to exercise police power, if necessary, to enforce Prohibition Amendment.**

   If Congress cannot effectively enforce the Eighteenth Amendment to the Constitution, except by the exercise of the police power, it may exert such power.

3. **Intoxicating liquors ⬳2½, New, vol. 8A Key-No. Series—Congress did not abuse power in prohibiting use of beer as medicine.**

   In view of the experience of the states, indicating the necessity of making prohibition apply generally to all liquors of the given kind in order effectively to prevent their sale for beverage purposes, and of the general opinion in the congressional investigation to determine the medicinal qualities of beer, Congress did not abuse its power to enforce the Prohibition Amendment by enacting Willis-Campbell Act, Nov. 23, 1921, § 2, prohibiting the use of beer as a medicine.

**4. Constitutional Law ⟨⟩48—Statute upheld, unless clearly unconstitutional.**
   Where it is not clearly apparent that a law is unconstitutional, it should be upheld.

In Equity. Suit by Piel Bros. against Ralph A. Day, Federal Prohibition Director for the State of New York, and others. On motion for preliminary injunction. Motion denied.

William M. K. Olcott, of New York City (Nathan Ballin, of New York City, of counsel), for complainant.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Frederick L. Kopf, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendants Day, Rafferty, Collins, and Blair.

GARVIN, District Judge. This is an action in equity, by which the plaintiff seeks to restrain the various defendants in their respective capacities from enforcing the provisions of the National Prohibition Law (41 Stat. 305) as supplemented by the act of Congress, approved by the President November 23, 1921, known as the Willis-Campbell Act, upon the ground that Congress exceeded its authority, so far as section 2 of the latter act is concerned. The case is before the court on a motion for a preliminary injunction.

Section 2 of the act provides:

"That only spirituous and vinous liquor may be prescribed for medicinal purposes, and all permits to prescribe and prescriptions for any other liquor shall be void."

The complainant asserts that the enactment is unconstitutional for these reasons:

(1) Because it is destructive of the personal liberty of the physician to prescribe and of the patient to be treated in such manner as the physician, from his knowledge and experience, deems best for the patient.

(2) Because it is an unwarrantable interference and destruction of the right of breweries to co-operate with physicians, patients, and druggists in the manufacture and sale of intoxicating malt liquors for medicinal purposes, a use never prohibited by the Eighteenth Amendment.

(3) Because the attempt of Congress to make such an enactment is not within its powers, as contravening that portion of the federal Constitution which limits to Congress the express powers delegated to it and expressly reserves to the states those powers not delegated.

(4) Because in the delegation of powers, the police power of internal regulation, in respect to the rights of citizens of states, and more particularly in regard to health, has never been a power delegated under the Constitution of the United States to Congress, and is therefore a power clearly reserved to the individual states under the general police power vested in them.

The Eighteenth Amendment to the Constitution provides:

"Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation

thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Sec. 2. The Congress and the several States shall have concurent power to enforce this article by appropriate legislation."

It is now a part of the fundamental law. Rhode Island v. Palmer, 253 U. S. 350, 40 Sup. Ct. 486, 588, 64 L. Ed. 946.

The National Prohibition Law, by which Congress sought to enforce this amendment, was enacted October 28, 1919, and has been held to be constitutional. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. 194; Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260; Rhode Island v. Palmer, supra. Writing for the majority of the court in the last-mentioned case, Mr. Justice Van Devanter said:

"While recognizing that there are limits beyond which Congress cannot go in treating beverages as within its power of enforcement, we think those limits are not transcended by the provision of the Volstead Act (title 2, § 1) wherein liquors containing as much as one-half of 1 per cent. of alcohol by volume and fit for use for beverage purposes are treated as within that power."

The question then is narrowed to whether Congress has now gone beyond those "limits" to which the court referred.

[1] Without the Eighteenth Amendment, the Willis-Campbell Act would have been an attempted exercise of police power. That power has never been delegated by the states to the federal government.

"To guard, however, against any possible misconstruction of our views, it is proper to state, that we are by no means to be misunderstood, in any manner whatsoever, to doubt or to interfere with the police power belonging to the states, in virtue of their general sovereignty. That police power extends over all subjects within territorial limits of the states, and has never been conceded to the United States." Prigg v. Pennsylvania, 41 U. S. (16 Pet.) 539, at page 625 (10 L. Ed. 1060).

[2] The authority of this decision is not questioned. If, however, Congress cannot effectively enforce the provisions of the Amendment involved, except by the exercise of police power, it is well settled that it may exert such power.

"But it is none the less true that when the United States exerts any of the powers conferred upon it by the Constitution, no valid objection can be based upon the fact that such exercise may be attended by the same incidents which attend the exercise by a state of its police power, or that it may tend to accomplish a similar purpose. Lottery Case, 188 U. S. 321, 357; McCray v. United States. 195 U. S. 27; Hipolite Egg Co. v. United States, 220 U. S. 45, 58; Hoke v. United States, 227 U. S. 308, 323; Seven Cases v. United States, 239 U. S. 510, 515; United States v. Doremus, 249 U. S. 86, 93, 94." Hamilton v. Kentucky Distilleries & Warehouse Company, supra.

In the case of Ruppert v. Caffey, supra, Mr. Justice Brandeis referred to the prevalence of opinion among Legislatures and courts of the several states that a liquor law, to be capable of effective enforcement, must—

"be made to apply either to all liquors of the species enumerated, like beer, ale or wine, regardless of the presence or degree of alcoholic content; or if a more general description is used, such as distilled, rectified, spirituous, fer-

278 F.—15

mented, malt or brewed liquors, to all liquors within that general description regardless of alcoholic content; or to such of these liquors as contain a named percentage of alcohol; and often several such standards are combined so that certain specific and generic liquors are altogether forbidden and such other liquors as contain a given percentage of alcohol."

[3] Thus it would seem that some states have considered it essential to the enforcement of their respective liquor laws to forbid absolutely the use of certain liquors for any purpose. Before the Willis-Campbell Bill was enacted, Congress conducted a careful investigation into the medicinal qualities of beer. Little was then said in its favor as a therapeutic agent. It may be conceded that it has always been considered as a beverage, rather than as a medicine, if any importance attaches to the amount consumed as a beverage as distinguished from the amount required by those who sought its medicinal qualities because of the advice of a physician, or of one who had benefited from its use. It would therefore appear that Congress deemed this legislation imperative to accomplish effective enforcement of the amendment, and at the same time was satisfied that there is little or no value in beer either as a therapeutic agent or as a galactagogue. The latter is disputed—bitterly disputed—by the complainant, which on the hearing of the motion filed numerous affidavits by physicians that beer has value as a medicine and is frequently prescribed under various conditions. If, having given due consideration to claims of such character, Congress has considered the legislation necessary to the effective enforcement of the amendment, it cannot be said that it has abused its power.

The case of People v. Cole, 219 N. Y. 98, 113 N. E. 790, L. R. A. 1917C, 816, is asserted by complainant to hold in effect that the state has no more right to deprive the citizen of the inherent right to health and the right to be treated medically, as he deems best and his medical adviser deems best, than Congress. There the defendant was indicted for an alleged violation of the Public Health Law of the state of New York (Consol. Laws, c. 45), in that he assumed to practice medicine, not as an authorized and duly licensed physician, but as a Christian Science healer. The Public Health Law provides that—

"No person shall practice medicine, unless registered and legally authorized prior to September first, eighteen hundred and ninety-one, or unless licensed by the regents and registered under article eight of chapter six hundred and sixty-one of the laws of eighteen hundred and ninety-three and acts amendatory thereto, or unless licensed by the regents and registered as required by this article. * * *" Public Health Law, § 161.

"The practice of medicine is defined as follows: A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition." Public Health Law, § 160, subd. 7.

The statute also provides:

"This article shall not be construed to affect * * * the practice of the religious tenets of any church. * * *" Public Health Law, § 173.

The court held, in referring to the paragraph last quoted:

"Whether the practice of the religious tenets of any church should have been excepted from the general prohibition against the practice of medicine unless the practitioner is registered and authorized so to do, or whether the exception should be continued therein is a question for the Legislature and not for the courts. The purpose of the general statute is to protect citizens and others of the state from being treated in their physical ailments and diseases by persons who have not adequate or proper training, education or qualifications to treat them."

It is clear, therefore, that the case is no authority for the proposition that a citizen has any inalienable right to be treated medically as he deems best. It may be observed in passing, that Judge Faris has held the act to be constitutional in the case of Falstaff Corporation v. Allen, 278 Fed. 643, recently decided in the Eastern district of Missouri, although in that case there was no claim of medicinal value.

[4] In any event, where it is not clearly apparent that a law is unconstitutional, it should be upheld. U. S. v. United Shoe Machinery Co. (D. C.) 234 Fed. 127; Interstate, etc., Railway Co. v. Mass, 207 U. S. 79, 28 Sup. Ct. 26, 52 L. Ed. 111, 12 Ann. Cas. 555. In view of the assumption of powers by Congress in the enforcement of the amendment, which have been sustained as valid, it cannot be said that it is manifest beyond a reasonable doubt that the act violates the fundamental law. That must appear, or the law must be upheld.

If these conclusions are correct, the motion for a preliminary injunction must be denied.