### FALSTAFF CORPORATION v. ALLEN et al.

(District Court, E. D. Missouri, E. D. February 7, 1922.)

No. 5872.

Intoxicating liquors ⬤⟿13—Amendment of Prohibition Act, prohibiting prescription of beer by physicians, held constitutional; "appropriate legislation."

National Prohibition Act as amended by Act Nov. 23, 1921, providing that "only spirituous and vinous liquors may be prescribed for medicinal purposes, and all permits to prescribe and prescriptions for any other liquor shall be void," *held* within the power conferred on Congress by Eighteenth Amendment, § 2, to enact "appropriate legislation" for its enforcement.

In Equity. Suit by the Falstaff Corporation against William H. Allen and others. On motion by defendants to dismiss bill. Granted.

FARIS, District Judge. This is an action for an injunction to prevent the enforcement by defendants of so much of the amendment of November 23, 1921, to the Volstead Act as provides:

"That only spirituous and vinous liquors may be prescribed for medicinal purposes, and all permits to prescribe and prescriptions for any other liquor shall be void"

—for that the inhibition above quoted is unconstitutional and void.

Defendants, who are officers of the government charged by law with

the duty of enforcing the statute quoted, have separately filed motions to dismiss complainant's bill, on the general ground that it states no sufficient facts to warrant the granting òf the relief prayed for. These motions constitute the matters herein up for judgment.

It is, of course, fundamental that before the adoption of the Eighteenth Amendment the Congress had no power to pass any law which either forbade, narrowed, or restricted the privilege of physicians to prescribe liquors for medicinal purposes; so it necessarily follows that the power in Congress to pass the law attacked by complainant must be found, if it exists, in the Eighteenth Amendment, and largely in so much of it as reads thus:

"After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors * * * for beverage purposes is hereby prohibited."

However difficult, therefore, the question presented may be in its solution, it is an extremely simple one in its statement: Did the language of the Eighteenth Amendment confer on the Congress authority to forbid the physicians, who are citizens of the several states, from prescribing intoxicating malt liquor as a medicine? There is no allegation in the bill, and, of course, no proof in the record, touching the question whether beer possesses, or does not possess, therapeutic value in the treatment or cure of diseases; in fact, learned counsel for complainant, both in their briefs and in their oral arguments, disclaim the assertion in behalf of beer of any medicinal value or property whatever.

Counsel bottom their contentions upon the grounds: (a) That the act under discussion invades the inviolable rights of natural liberty inalienable in free men; (b) that the Eighteenth Amendment therefore cannot, and as a matter of law and fact does not, confer on the Congress the authority to say what particular thing or agent may or may not be prescribed as a medicine, by physicians residing in the several states of the Union.

Holding in mind, therefore, the allegations of complainant's bill, and the candid disclaimer of complainant's counsel, it is obvious that it cuts no figure in the case, upon the question now presented, whether beer is or is not valuable as a medicine, for, regardless of such value, counsel contend that Congress has no right, even by virtue of the Eighteenth Amendment, to invade a natural, inviolable, and indestructible right of mankind, which right, it is strenuously contended, connotes the privilege to use, and to have prescribed for use, in the treatment and cure of those ills which flesh is heir to, any thing or agent which any physician may desire to use, or deem of therapeutic value, regardless, I repeat, of whether such thing or agent actually has such value or not, as a matter of fact.

Courts take judicial notice that beer, of the sort here involved, is an intoxicating liquor; but they do not judicially notice whether beer is or is not valuable as a therapeutic agent. It follows, then, that for the present purposes of this case, beer which complainant desires to make and sell without any interference from the defendants, must be regarded as an intoxicating liquor which possesses no recognized medicinal value whatever. If it could be proven to be, or if it were judi-

cially noticed as being, of value in the cure or treatment of diseases, a far more serious question might be presented, for in such latter case the question would arise whether Congress, having had conferred on it by the Eighteenth Amendment the power only to forbid the manufacture, sale, or transportation of intoxicating liquors as beverages, could by any law it might pass forbid the use of any kind or sort of such liquors for medicinal purposes, if any of the liquor so forbidden possessed medicinal value.

Confessedly, the latter question is a most troublesome and far-reaching one, whose ultimate solution must inevitably bring about the very sharpest conflict between notions touching the very nature of the federal Constitution, which notions have long been regarded as well settled, if not fundamental, and necessary and practical legislation for the enforcement of the Eighteenth Amendment, which legislation goes to the very life of the matter of enforcement; for, if the Eighteenth Amendment shall allow questions of fact to be raised touching whether a given beverage is or is not intoxicating, or is or is not of therapeutical value, so that courts and juries may decide these questions upon the weight of the evidence, then the legal views upon these questions will depend upon state lines, or even boundaries of federal court districts. But I need not go farther into this.

It is fundamental that the word "beverage," as used in the Eighteenth Amendment, has no technical meaning, but that it is used in its ordinary meaning as defined in the dictionaries. It means, then, simply *liquid for drinking,* and connotes that the act of drinking is not accompanied by any ulterier purpose, or followed by any beneficial result, present, potential, or even hoped for. Many beverages—for example, milk, coffee, and tea—are drunk either as beverages or foods, or both. In the final analysis, it might well be insisted that the Eighteenth Amendment does not, *in terms,* forbid the use of beer as a food; but it will hardly be contended that its use for such purpose can be permitted in the face of this amendment, and the statutes passed by virtue thereof, even though chemical analysis discloses that it possesses some food value, and even though in other times it may have constituted, as to many, both food and drink. In other words since the adoption of the Eighteenth Amendment, the privilege of drinking beer is no longer allowed to be governed by the state of mind of him who drinks it; for, since it is an intoxicating liquor, its use is forbidden by the Eighteenth Amendment, and such use may be forbidden by a law passed by Congress, under the power conferred by that amendment; certainly, unless its use be permissible because it possesses such medicinal value as to remove it from the ban of the constitutional amendment, and the statutes passed thereunder.

The Eighteenth Amendment and the Volstead Act (41 Stat. 305) both forbid the use of beer as a beverage. The amendment to the Voltead Act, now before me, forbids its use as a medicine. When used as a drink, it necessarily follows that it is so used either as a beverage, or as a medicine. If it has no value as a medicine, then when it is used as a drink it is used as a beverage, and this the Eighteenth Amendment, and the laws passed thereunder, forbid. It is, of course,

true, as already forecast, that the federal Constitution is a grant of power, and not, as is the Constitution of Missouri, for example, a mere limitation upon power, whereby the General Assembly may pass for the public weal any law not forbidden by the state Constitution. But it is no longer true to say that Congress has no police powers which, through legislation, it may exercise within the body of the state.

Touching the subject-matter of prohibiting the sale, manufacture, or transportation of intoxicating liquors for beverage purposes, Congress, perforce the Eighteenth Amendment, now has within the several states the same police powers which these states themselves enjoyed before the adoption of that amendment. Of course, I put stress in making this statement upon the expression "intoxicating liquor for beverage purposes." U. S. v. Cohen (D. C.) 268 Fed. loc. cit. 426. Some notion even that a thorough-going, full, and complete power in this. behalf, not at all modified and restricted by the term "for beverage purposes," may, among other things, be contemplated by the concurrent power of enforcement conferred by the second ·section of the Eighteenth Amendment. Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260; Commonwealth v. Nickerson, 236 Mass. 281, 128 N. E. 273, 10 A. L. R. 1568. But on this latter most serious question the case does not require me to pass.

It will also be noted that section 2 of the Eighteenth Amendment confers on Congress (agreeably to a like power theretofore enjoyed by the several states) the power to enforce this article by appropriate legislation. The word "appropriate," as used in other parts of the federal Constitution, has been defined by the Supreme Court of the United States in the case of Ex parte Virginia, 100 U. S. loc. cit. 345, 25 L. Ed. 1667, where it was substantially said that "appropriate legislation," as used in the Thirteenth and Fourteenth Amendments to the Constitution of the United States, means legislation contemplated to make the amendments fully effective; that is, legislation adapted to carry out the · objects the legislators had in view, and whatever tends to enforce submission to the prohibitions thus contained, and to secure to all persons the enjoyment of perfect equality of civil rights and equal protection of the laws against state denial or evasion, if not prohibited, is brought within the domain of congressional power.

This brings me to the query as to what is the object which the legislators had in view in passing the Volstead Act. This question is at least partially answered by a provision in the Volstead Act itself. This act, to which the statute here attacked is an amendment, provides, among other things, that it shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented. The Volstead Act, against a general and a few specific attacks, has been held constitutional. See Rhode Island v. Palmer, 253 U. S. 350, 40 Sup. Ct. 486, 588, 64 L. Ed. 946; Hamilton v. Kentucky Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. 194; Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260.

Since the end sought, as Congress has thus solemnly determined, is the prohibition of intoxicating liquors as a beverage, no one, I apprehend, can well contend that the amendment of November 23, 1921, is

not appropriate legislation to the end sought. Color is lent to the appropriateness of the restriction here complained of by the fact that a large number of the states of the Union have deemed it absolutely necessary to pass laws which prohibit the prescribing for medicinal purposes of any intoxicating liquors whatever, save alcohol alone. See Ruppert v. Caffey, 251 U. S. loc. cit. 283, 40 Sup. Ct. 141, 64 L. Ed. 260, et seq. Those statutes thus restricting the privileges of physicians have been upheld in every case, so far as my examination of the holdings extends; indeed, on principle, no legal reason exists why any such statute of a state could or should be held invalid, for it is settled by a long and uninterrupted line of cases, that the states may regulate the mode and manner, and the circumstances, under which the liquor traffic may be conducted, and may hedge about the right to pursue it with such restrictions, conditions, and limitations as the Legislature may deem proper, or they may even prohibit it entirely. 15 R. C. L. 455, and cases cited.

While I am of opinion that it cannot be successfully contended that Section 1 of the Eighteenth Amendment conferred on the Congress the same thorough-going, full, and complete power to legislate touching the sale, manufacture, and transportation of intoxicating liquors as the states themselves had theretofore enjoyed before the adoption of the Eighteenth Amendment (for such contention is, in my humble opinion, in the very teeth of the terms of that amendment itself), yet, what the states have found it necessary to do in order to curb illegal traffic in intoxicating liquors, and what it has been held they could lawfully do in this behalf, throws some light upon the question of what is appropriate legislation, and also some light on the contention of plaintiff that the statute here attacked violates the inherent rights of mankind. Surely the several states have no more power to violate such rights than has Congress! Before the effective date of the Eighteenth Amendment, when power so to do was to be found, if at all, in the "appropriate legislation" provisions of the federal Constitution, or through interpretation of the constitutional provisions relative to the waging of a successful war, the Supreme Court of the United States upheld the war-time prohibition definition of an intoxicating liquor as being any liquid which contained more than one-half of 1 per cent. of alcohol. Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct 141, 64 L. Ed. 260. In this case it was held, in effect, that Congress, in the light of what experience had demonstrated to the several states to be necessary in enforcing prohibition, could arbitrarily declare a fact to exist, and, so declaring, could preclude the courts themselves from any judicial examination and finding upon such fact thus legislatively determined.

While in the case of Ruppert v. Caffey, supra, the question which was legislatively determined by Congress was that a malt liquor which contained more than one-half of 1 per cent. of alcohol is per se intoxicating (so that the courts are absolutely concluded by this legislative determination), yet the principle is precisely the same on that point in that case as in the point up for judgment in the case at bar; for it seems clear if Congress already had the power under the federal Constitution, absent the aid of the Eighteenth Amendment, to legislatively

determine whether a given per cent. of alcohol in a beverage renders such beverage intoxicating, then, present the aiding provisions of the Eighteenth Amendment, as in the case at bar, it can, by the same token, legislatively determine whether an intoxicating beverage is or is not a therapeutic agent. Therefore (and holding this view as to what was ruled in the Ruppert Case) I am bound by the principle declared therein, even though I might personally lean to the view that ordinarily Congress has no power to legislatively determine a controverted question of fact, so as to preclude the courts from judicially examining and determining such a fact for themselves. But in any view, even if the Ruppert Case does not go so far in legal principle as I am constrained to construe it as going, it throws much light on this case.

While the confusion, and I might say legal chaos, obviated by the rule I deem to be present in the Ruppert Case, is apparent, it is a little difficult to reconcile it with the notion heretofore extant that the federal Constitution is a grant of power by the several states to the United States. But, be this as may be, I am in duty bound to follow the principle of the case, supra. So, if what the several states have done, and can do, in the enforcement of prohibition, furnishes a thoroughgoing rule of action to Congress in legislating about the subject-matter, it is obvious there is nothing left of the contention of complainant; even if what the states can do *serves only to indicate what is appropriate legislation,* there is little left, in my opinion, of complainant's case.

It is true that in the case at bar the fact legislatively determined by Congress—that is, that beer has no medicinal value—is not controverted; so in a way the point is but indirectly involved in the discussion. But, if it were involved, I am constrained to believe that the principle so clearly set forth in the case of Ruppert v. Caffey, supra, absolutely settles it so long as that case shall stand as a rule of action. So far, of course, as I am concerned, or any court of inferior jurisdiction is concerned, it must stand as a rule of action until it has been changed by the Supreme Court of the United States, which ruled it. The rule is that a statute ought not to be held unconstitutional unless the court so holding is convinced beyond a doubt, based on reason, of such invalidity. State v. Baskowitz, 250 Mo. 82, 156 S. W. 945, Ann. Cas. 1915A, 477, I am not, to the extent noted, so convinced; but, on the contrary, I feel no doubt, the authorities considered, that the statute here involved is constitutional and one which Congress, by virtue of the Eighteenth Amendment had the right to pass.

If so it be, that the power so conferred upon Congress by the Eighteenth Amendment had the effect to narrow, or impinge upon, or wholly wipe out, constitutional rights and guaranties heretofore deemed vested and inviolable, the situation may be regrettable, but it cannot be helped. The Constitution when amended must be construed as a whole. If later amendments destroy, impinge upon, modify, or wipe out old provisions, the newer provisions must stand, because they are the last utterance of the people, who reserve to themselves the right to change the organic law, in the way provided by the organic law itself. Of course, the Constitution, when amended, should, if possible, be so construed as to give effect to both the old and the new parts thereof; but if this be impossible, if the new inevitably and unquestionably changes old pro-

visions and destroys antecedent guaranties, the only help for the situation is an amendment which will restore these rights and guaranties.

Article 5 of the federal Constitution (barring a prohibition as to equal representation in the United States Senate, not here in question) conferred on the people the power of amending the Constitution; they have seen fit to amend it by the adoption of the Eighteenth Amendment. It is obvious that the power to amend connotes, not only the power to add to, but also the power to change whatever was contained in it, which the sovereign people desire to change. So it is, to my mind, utterly futile to urge that the Eighteenth Amendment cannot stand for what it fairly and obviously means, if such construction shall be in effect to change, modify, or impinge, or in fact destroy, old provisions and guaranties. In such case, and in the face of such obvious conflict, I repeat, the old provisions must yield, and the newer provisions must stand. Any other view would, in effect, be tantamount to saying that the Constitution cannot be amended at all. The people may be mistaken; their course may be tending toward restrictions of human liberty in comparison with which absolute monarchy would be hailed and acclaimed as freedom; but under our form of government they are sovereign, and the majority rules, and when they change the organic law in the solemn manner provided therein this change must stand, and be fairly construed and honestly enforced until it, in turn, shall be again changed in due and legal form.

When this matter was first presented, and this bill filed, complainant, as it was averred, had on hand a large quantity of beer, which it had made pursuant to permit regularly issued to it. This permit had been issued under the opinion of the Attorney General of the United States, who construed the then existing law as allowing the making and sale of beer for medicinal purposes. Certain of the defendants, upon the passage of the Act of November 23, 1921 (which outlawed a large quantity of beer thus made and held by complainant), were threatening to destroy the same unless complainant dealcoholized it at once. In either contingency complainant (which had done nothing except to honestly and fairly follow the law as interpreted by the highest non-judicial legal authority in the United States) would have been subjected to loss of its property. To prevent such loss, which, in my view, would have been tantamount to taking the property of complainant without due process of law, a temporary restraining order pending further hearing was granted to afford opportunity to complainant to avoid, if possible, and if so advised, the contingent loss. It is scarcely conceivable that Congress would have passed the amendment of November 23, 1921, without providing certain days of grace before the act went into effect, if it had been advised of the situation existing. Be this as may be, it seemed only fair to temporarily stay the action threatened until the case could be presented on its merits, and this was done.

It follows, from what has been said, that the several separate motions to dismiss should be sustained, and the bill dismissed, as being without equity. The temporary restraining order will, it necessarily follows, be set aside.

Let it be so ordered.