**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Terry Lamar CRAWFORD,
Defendant–Appellant.**

No. 01–2396.

United States Court of Appeals,
Sixth Circuit.

Jan. 7, 2004.

Andrew B. Birge, U.S. Attorney's Office, Grand Rapids, MI, for Plaintiff–Appellee.

Anthony C. Greene, Grand Rapids, MI, for Defendant–Appellant.

Before KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

## OPINION

ROGERS, Circuit Judge.

Appellant Terry Lamar Crawford appeals from the sentence imposed by the district court pursuant to his plea of guilty to one count of violating 18 U.S.C. § 922(g), which makes it illegal for a felon to be in possession of a firearm, and one count of absconding while on bond. The issue Crawford presents in this appeal is whether his sentence should be vacated because the Government violated the terms of his plea agreement when it used against him incriminating statements made in a proffer. We affirm, because the district court correctly found that Crawford's use of the proffer statement on cross-examination of the Government's witness opened the door to the use of Crawford's statements, and because the district court correctly determined that Crawford's own perjured testimony nullified the Government's duty to refrain from using the proffer against him.[1]

## FACTS

On September 11, 1998. Grand Rapids, Michigan, police officers and Agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") executed a search warrant at an apartment occupied by Crawford's girlfriend, Octavia Buckley, and, at least occasionally, by Crawford himself.[2] When the officers and agents executed the warrant, they found not only the defendant, but also several items of mail addressed to him and several articles of male clothing consistent with his size. The agents also found five firearms in the west bedroom of the home—a Remington 12 gauge pump shotgun, a Ruger "Mini 30" semiautomatic rifle, a Thompson/Center Arms .357 caliber "Contender" pistol. an Intratec .22LR caliber "Tec 22L" semiautomatic pistol, and a Walther 9mm "P38" semiautomatic pistol. The shotgun and the Ruger were located in the closet: the three handguns were located in a safe in the west bedroom.

At the time the search warrant was executed. Crawford was on probation for a prior felony conviction in Arkansas for aggravated assault. Further investigation revealed that Crawford had purchased the Ruger while facing a felony drug possession charge.[3] In order to purchase the Ruger, Crawford falsified a form requiring him to disclose his prior misdemeanor and felony convictions. Ultimately. Crawford was indicted in the Western District of Michigan for being a felon in possession of a firearm, knowingly receiving a firearm while subject to felony charges, and making a false statement material to a firearms sale. At some time prior to his trial date. Crawford absconded while on bond.

After Crawford was arrested for the violation of his bail and returned to the

---

1. In Crawford's brief, he also contended that, under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), his sentence should be vacated because factors used to enhance the sentence were not proven beyond a reasonable doubt. However, we do not consider this contention because Crawford has since conceded that *Apprendi* does not control in his case.

2. This is a matter in some dispute. The defendant adduced some evidence that he maintained a continuous residence with his sister instead, and only occasionally stayed overnight with Buckley. The Government maintained that he "lived" in Buckley's apartment, although his name was not on the lease and he did not pay rent. The district court found that the defendant was, at least, an occasional occupant for purposes of having sexual relations with Buckley and spent the night at the apartment on the night preceding execution of the search warrant.

3. Crawford was charged with possession with intent to deliver less than 50 grams of cocaine. *See* MCL § 333.7401(2)(a)(iv) (making it a felony to possess with intent to deliver less than 50 grams of a schedule 1 or 2 controlled substance).

836

Western District of Michigan, he entered into a plea agreement with the Government. Crawford agreed to plead guilty to the felon-in-possession charge and to absconding on bond. He also agreed to assist the Government in criminal investigations. In return, the Government agreed to dismiss the first two counts of the indictment and "to use good faith in deciding whether to file a motion for departure and or reduction of sentence [for providing substantial assistance to authorities]." The Government also conditionally agreed not to use the contents of any proffer against Crawford in its case-in-chief, provided that Crawford was truthful at all times.

When Crawford appeared for sentencing, he objected to the conclusion in the presentence report that he was in possession of five weapons and that he was in possession of the Tec–22. The Government then called Special Agent Jim Walsh of ATF to testify to the circumstances of the execution of the search warrant of Buckley's residence and the recovery of the weapons. Walsh testified that they recovered five weapons from the west bedroom of the apartment. In attempting to tie the five weapons together, the attorney for the Government did elicit some testimony relating to Crawford's proffer.

> [THE GOVERNMENT]: One of the two long guns that was in the closet, I think you described it as a Ruger Mini 30?
>
> [THE WITNESS]: Correct.
>
> [THE GOVERNMENT]: Who purchased that gun?
>
> [THE WITNESS]: Mr. Terry Lamar Crawford purchased that gun from Gander Mountain in Grand Rapids.

Walsh knew that Crawford purchased the Ruger Mini 30 because Crawford volunteered that information in his proffer.

On cross-examination, defense counsel questioned Walsh directly on the ownership of the Tec–22.

> [DEFENSE COUNSEL]: You ever talk to Mr. Crawford pertaining to that Tech [sic]—to the pistol in question?
>
> [THE WITNESS]: Have I talked to him? Yes, I have.
>
> [DEFENSE COUNSEL]: And has he always maintained that it was not his pistol?
>
> [THE WITNESS]: Well, during a proffer statement that he had given to us he claimed that that pistol belonged to a Mr. Hutchinson, a friend of his.
>
> [DEFENSE COUNSEL]: So he claimed it was not his?
>
> [THE WITNESS]: He claimed it was another individual's, yes.

After this colloquy, the attorney for the Government noted that the defense had questioned Agent Walsh on the proffer and asked "in the interest of completeness" to conduct redirect examination of Agent Walsh regarding the proffer. The district court concluded that the defense had placed the proffer in issue and that the Government was entitled to redirect examination on the issue of the proffer. The Government then questioned Agent Walsh directly on Crawford's proffer:

> [THE GOVERNMENT:] I think you answered in Cross Examination that the Tech [sic] 22—that the Defendant said during his proffer that the Tech [sic] 22 belonged—was owned by somebody else; is that correct?
>
> [THE WITNESS]: Yes. sir.
>
> [THE GOVERNMENT]: Where was it being stored?
>
> [THE WITNESS]: Well, that gun was found in the safe in the closet of the west bedroom.

[THE GOVERNMENT]: And what was it being stored with?

[THE WITNESS]: Two other handguns.

[THE GOVERNMENT]: During the same proffer did Mr. Crawford tell you whose guns the other two were?

[THE WITNESS]: Yes, he admitted they were his.

After the Government's redirect of Agent Walsh. Crawford took the witness stand. When he testified on direct examination. Crawford denied owning any of the guns except the Ruger, which he admitted purchasing for the purpose of bear hunting while he was on bond on charges of cocaine possession. The attorney for the Government then impeached Crawford with the proffer.

[THE GOVERNMENT]: Told the officers you bought [the Ruger Mini 30] for bear hunting and did they tell you they didn't believe you?

[THE DEFENDANT]: I don't recall them telling me.

[THE GOVERNMENT]: And after they said that then you acknowledged that you bought the gun for protection because you were being threatened by a drug dealer in connection regarding a thousand dollar debt. Do you remember tell [sic] the officers that?

[THE DEFENDANT]: Yes, I said that.

[THE GOVERNMENT]: So. in fact, you didn't buy it for bear hunting, you bought it for protection?

[THE DEFENDANT]: I bought it for both.

[THE GOVERNMENT]: Did you get a bear?

[THE DEFENDANT]: No, I did not.

[THE GOVERNMENT]: You bought it for protection and because you were threatened by a drug dealer regarding a thousand dollar debt, you do acknowledge you said that?

[THE DEFENDANT]: I said I bought -

. . .

[THE GOVERNMENT]: That's a yes or no question. Do you acknowledge saying you bought the Ruger Mini 30 rifle for protection because you were being threatened by a drug dealer regarding a thousand dollar debt?

[THE DEFENDANT]: I said that, too.

After Crawford testified, the Government called Agent Walsh as a rebuttal witness. This time, the Government questioned Walsh directly on the proffer.

[THE GOVERNMENT]: Do you recall meeting with the Defendant and his then attorney for the purposes of conducting a proffer sometime previous to today?

[THE WITNESS]: Yes, sir, I do.

[THE GOVERNMENT]: Did you inquire of the Defendant concerning all five of the guns that were found in the closet or in the safe in the closet?

[THE WITNESS]: Yes, sir, I did.

[THE GOVERNMENT]: He acknowledged, did he not, the long gun, the mini 30 Ruger?

[THE WITNESS]: Yes, sir, he did acknowledge that he had purchased the Ruger rifle from Gander Mountain.

[THE GOVERNMENT]: Did he also acknowledge the 12–gauge shotgun as being his?

[THE WITNESS]: Yes, sir.

[THE GOVERNMENT]: Contrary to his testimony today[,] did he acknowledge two of the three guns in the safe were his?

[THE WITNESS]: Yes, sir, he did.

After hearing this testimony, the district court ruled on whether the Government could use the proffer to impeach and rebut Crawford's testimony. The Government,

referring to the text of its proffer agreement with Crawford, maintained that it could use the proffer against Crawford if his testimony was materially inconsistent with the information in his proffered statement. Defense counsel, however, objected to *any* use of the proffered statement against Crawford. Over defense counsel's objection, the district court concluded that Crawford's testimony in the sentencing proceeding was "materially different" and "thereby justif[ied] the Government [in] using the proffer information."

At the conclusion of the testimony and argument, the district court set Crawford's base offense level at 22. The court based its ruling on a determination that Crawford was, at least constructively, in possession of all of the charged weapons, including the Tec–22. The court further imposed a two point enhancement for the number of weapons in possession, pursuant to U.S.S.G. § 2C2.1(a)(3). It further imposed an additional two point enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.

The district court gave two reasons for not granting Crawford a downward adjustment for acceptance of responsibility. First, the court explained that Crawford "lied about the ownership of these weapons, ... [did] not truthfully [admit] that offense of conviction for the felon in possession charge, and merely [admitted] that he had one and [denied] he possessed the other four." and therefore was not entitled to an adjustment for acceptance of responsibility. Secondly, the court noted that "[a]s an absconder[,] his conduct belies any acceptance of responsibility in this case." Finding that Crawford fell into criminal history category III, the district court imposed sentences of 91 months for the felon-in-possession charge and six months for the absconding charge, to be served consecutively. The court also imposed two concurrent three-year periods of supervised release.

## DISCUSSION

The question Crawford raises on appeal has two components, which we consider seriatim. The first component concerns whether Crawford opened the door to use of the proffer during the cross-examination of Agent Walsh and to what extent the Government could use the proffer statement on redirect. Because that claim relates to an evidentiary ruling, it is reviewed for abuse of discretion. *United States v. Spikes,* 158 F.3d 913, 927 (6th Cir.1998).

■ The Government was entitled to use the proffer in its redirect of Agent Walsh because the defense counsel's cross-examination opened the door to its use. Generally, evidence which is otherwise suppressed or excluded becomes admissible when the defendant opens the door to the issue. *See Spikes,* 158 F.3d at 928 (citing *United States v. Segines,* 17 F.3d 847, 856 (6th Cir.1994)). "The fact that a portion of the statement was 'suppressed' by mutual agreement of the parties, as opposed to by the court, does not change this analysis." *Id.* If the defendant uses otherwise excluded evidence, the district court does not abuse its discretion by allowing the prosecution to use the inculpatory aspects of the excluded material to "clear up" any false impressions created by the defense. *Id.* at 929.

Our opinion in *Spikes* is instructive. In that case, the Government informally agreed not to use an inculpatory statement made by the defendant to police because it had failed to produce the statement to the defense in a timely manner. *Id.* at 920. At trial, the Government called an agent to testify to the fact that the defendant denied any knowledge of drugs in the residence in which the warrant was executed.

*Id.* at 921. When defense counsel cross-examined the agent, counsel asked the agent questions regarding the excluded statement in a manner that highlighted an exculpatory aspect of the statement while obscuring an inculpatory aspect of the same statement. *Id.* The Government immediately requested a sidebar, at which it asked the court to permit some redirect to clear up confusion caused by the defendant's use of the excluded statement. *Id.* The district court then permitted the Government to question the witness on the inculpatory aspect of the excluded statement.

We affirmed in *Spikes* because fairness requires a remedy when one party disregards its obligations under an informal agreement. *Id.* at 928. Spikes's use of the inculpatory statement was misleading and violative of the "the spirit, if not the letter, of the parties' agreement." *Id.* We explained that Spikes's actions opened the door to "the limited use of the inculpatory statements in order to clear up the false impression conveyed to the jury." *Id.* In this case, defense counsel attempted to use the proffer statement to force Agent Walsh to commit to Crawford's denials. The question. "You ever talk to Mr. Crawford pertaining to that Tech [sic]—to the pistol in question?" was intended to elicit testimony regarding the proffer. The only testimony the question elicited, however, was that Crawford attributed ownership of the Tec–22 to another person. The defense was able to place the proffered statement in a favorable light while the Government was barred from using it. The district court did not abuse

its discretion in allowing the Government to clarify the misleading aspects of the agent's testimony.

Furthermore, the district court did not err when it determined that the Government did not violate the plea agreement when it used Crawford's proffer to impeach and rebut his testimony. The second component of Crawford's appeal concerns the Government's use of the proffer when it called Agent Walsh as a rebuttal witness whether it the Government violated the terms of the plea agreement when it questioned Walsh directly on the proffer. A district court's determination of whether the Government's conduct violates the terms of a plea agreement is subject to *de novo* review. *United States v. Barnes,* 278 F.3d 644, 646 (6th Cir.2002).

The plea agreement is fairly clear in its terms that Crawford's statements would not be used against him unless his testimony materially changed or he lied.[4] If Crawford's story changed, however, the plea agreement specifically provided that the Government could cross-examine him on his proffered statement. Moreover, the "agreement [was] null and void and his statements [can] be used against him in a court of law" if he lied at any time to "law enforcement officers, the prosecutor, the court, or defense counsel."

■ When Crawford denied owning any of the guns in the apartment other than the Ruger, he triggered the Government's entitlement to cross-examine him with the proffer statement by offering materially different testimony from his proffer state-

---

4. The plea agreement contains a handwritten notation stating that "[p]roffer letter dated 3/23/01 incorporated into this plea agreement." The notation is initialed by the attorney for the Government and defense counsel. The parties do not question the validity of this notation, and it is well settled that parties to a contract may incorporate outside documents into the contract. *See Interstate Consol. St. R. Co. v. Commonwealth of Massachusetts,* 207 U.S. 79, 84–85, 28 S.Ct. 26, 52 L.Ed. 111 (1907). We therefore consider the proffer letter dated March 23 to constitute a valid and enforceable provision of the plea agreement.

ment. In that proffer, he admitted to, *inter alia,* purchasing the 12–gauge shotgun from a "crackhead" named Johnny. His failure to admit that he purchased the shotgun was sufficient to permit the Government to use the proffer for impeachment purposes.

When Crawford was subsequently deliberately deceptive after being confronted with the proffer on cross-examination, his deception nullified the agreement and enabled the Government to call Agent Walsh to testify regarding the proffer. Crawford admitted in his proffer to owning four of the five weapons recovered; however, when cross-examined by the Government at his sentencing. Crawford admitted only to owning the Ruger rifle. The fact that Crawford persisted in his new version of the events after being confronted with his proffer on cross-examination necessitated that the Government call Agent Walsh to convey an accurate version of the facts. Crawford cannot have it both ways–if he wanted to enjoy the protections of the plea agreement, he was bound by its terms to tell the truth. He cannot be heard to object to the Government's breach of the terms of the plea agreement when he was the first party to commit a material breach.

In sum, we are satisfied that the district court was correct in its conclusion that it could consider the proffer in enhancing Crawford's sentence. It is clear that the defense sought to use the defendant's statement to elicit favorable testimony from the Government's witness. In so doing, he opened the door for the Government to use the statement to clarify any confusion created by the defense's use of the statement. Moreover, Crawford nullified the plea agreement when he was deceptive at his sentencing hearing, entitling the Government both to use the proffer statement for impeachment and to call Agent Walsh as a rebuttal witness.

Therefore, we affirm the judgment of the district court.